## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| APRIL NIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 1:17-CV-02785-SCJ-JFK |
| | ) | |
| MCMASTER-CARR SUPPLY CO., | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF OBJECTION TO DECLARATIONS OF
### JOEL MAXWELL, MEGAN PUIG, AMY MADERE, PATRICK
### MCKENNA, AND ALLISON THOMAS

**COMES NOW** Plaintiff April Nix in the above-styled action and hereby files

this Notice of Objection to the Declarations of Joel Maxwell (ECF No. 53, 40-3),

Megan Puig (ECF No. 54, 40-12) under *Van T. Junkins & Associates, Inc. v. U.S.*

*Inds., Inc.* 736 F.2d. 656 (11th Cir. 1984) that they be disregarded as "sham"

affidavits because they contradict prior deposition testimony. Plaintiff additionally

objects to the Declarations of Joel Maxwell, Megan Puig, Amy Madere (ECF No.

52, 40-11), and Patrick McKenna (ECF 55, 40-19) on grounds of hearsay and

invading the province of the court by providing inadmissible legal opinion. Finally,

Plaintiff objects to the Declaration of Allison Thomas (ECF No. 51, 40-18) pursuant

to Rules 26(e) and 37 of the Federal Rules of Civil Procedure because she was not disclosed in discovery.

## I.    INTRODUCTION

On May 14, 2018, Defendant filed its Motion for Summary Judgement (ECF No. 40-1). In support of its Motion, instead of citing to its employees' deposition testimony, Defendant created and submitted the declarations of Joel Maxwell, Megan Puig, Amy Madere, Patrick McKenna, and Allison Thomas. McMaster Carr asks the Court to award it judgment as a matter of law while citing to a record that inherently raises credibility determinations. Rather than cite to deposition testimony where possible, when citing to evidence of its employees McMaster Carr exclusively cites to declarations. The Maxwell and Puig Declarations contradict prior deposition testimony taken on central issues of the case – (a) safety of potential accommodations and (b) whether Ms. Nix made FMLA leave requests. Because there is no credible explanation for these contradictions, portions of the Maxwell and Puig Declarations should not be considered at summary judgment under the "sham" affidavit rule.

Separately, each declaration is replete with hearsay, speculation, baseless conclusion, and other infirmities that render them meaningless from an evidentiary standpoint.

2

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A. <u>Sham Affidavit</u>

Portions of the Maxwell and Puig Declarations are "sham" affidavits under *Van T. Junkins & Associates, Inc. v. U.S. Inds., Inc.* 736 F.2d. 656, 656-58 (11th Cir. 1984). In *Junkins*, the Eleventh Circuit explained that when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create an affidavit that merely contradicts, without valid explanation, previously given clear testimony. *Id.; see also Faulk v. Volunteers of Am.*, 444 F. App'x 316, 318 (11th Cir. 2011) (affirming district court's ruling to strike inconsistent declaration)[1].

### 1. Joel Maxwell

First, paragraphs 67-70 should be disregarded as a sham because they contradict Mr. Maxwell's deposition testimony that Ms. Nix did not ask for FMLA leave during the October 13th meeting. (*Compare* ECF 48, Maxwell Dep., p. 102 with ECF 40-3, Maxwell Dep., para 67-70). During his deposition, Mr. Maxwell was unambiguously asked, "on the meeting on the 13th, did she ask if she could just have

---

[1] At a minimum, McMaster Carr's use of inconsistent declarations create credibility issues that "require" resolution by the jury and justify denial of its request for summary judgment. *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986).

additional time with her FMLA leave, additional time off?" (ECF 48, Maxwell Dep., p. 102). Mr. Maxwell unambiguously answered, "No, she didn't." (Id.) It was confirmed "Q You don't recall that at all? A No." (Id.)

After another member of McMaster Carr management, also present at the termination meeting, impeached Mr. Maxwell, he offered a sham affidavit contradicting his prior testimony and stating that he did not perceive Ms. Nix's request for leave during the October 13th meeting to be a request for FMLA leave. (ECF 40-3, Maxwell Dep., para 67-70).

The Maxwell declaration is a sham because this explanation "does not withstand any scrutiny." *Piatti v. Bank of Am., N.A.*, 2009 WL 383376, at *4 (N.D. Ga. Feb. 11, 2009) (refusing to consider portions of affidavit when explanation for contradiction "does not withstand any scrutiny"). First, Mr. Maxwell's explanation cannot withstand scrutiny because another McMaster Carr employee testified that Ms. Nix specifically used the term "FMLA" in conjunction with her request for leave on October 13th. (ECF 41, Puig Dep., p. 208-09, 213-14; Ex. 27 to Puig Dep., p. 1 "April asked if she could take an FMLA protected leave"). Additionally, the McMaster Carr employee admits that Mr. Maxwell himself used "FMLA" when responding to Ms. Nix's request: Mr. Maxwell "explained that the FMLA does not apply in this situation" (ECF 41-22, p. 1).

It is entirely incredible that Mr. Maxwell would not have perceived this dialogue to be a request for FMLA leave given his experience and education. Mr. Maxwell is the human resources director for McMaster Carr's Atlanta facility. (ECF 48, Maxwell 30(b)(6) Dep., p. 7). He has a Master's in Business Administration with a focus on human resources in the course work. (Id. at 19). He is also a member of the Society for Human Resource Management, as well as the Atlanta chapter of the Society of Human Resource Management. (Id.). He holds a senior certified professional certification from SHRM as a result of his work experience, academic experience, and completion of standardized testing. (Id.). Mr. Maxwell has both work experience and academic training, in the federal laws governing employees. (Id. at 20). Ms. Nix and Mr. Maxwell both used the word "FMLA" – the only conclusion is that he perceived her request as a request for FMLA leave.

Mr. Maxwell's sham declaration offers no reasoning or substance to support his position that he did not perceive Ms. Nix's request for leave to be for FMLA leave. He should not be given a third bite at the apple.

Second, paragraphs 68, 70-71, 82-84 of the Maxwell declaration should be disregarded as a sham because they contradict prior deposition testimony that if Ms. Nix had described the need for a leave, the company would have granted additional FMLA leave. (*Compare* ECF 48, Maxwell Dep., p. 102-104 with ECF 40-3,

5

Maxwell Dec, para. 68, 70-71, 82-84). During his prior deposition Mr. Maxwell was unambiguously asked and he unambiguously answered that if Ms. Nix had described the need for a leave, the company would have granted additional FMLA leave:

> Q Did the company consider additional FMLA leave time for her before it fired her?
>
> A So, the, you know, the company responds to -- responds to the requests of employees and responds to the guidance of doctors. And so the company isn't asking someone, the company is responding to what an individual is saying or what a doctor is saying.
>
> Q I don't think you've answered my question, sir, you've answered a different question.
>
> My question is, is did the company consider granting additional FMLA leave time to her before it fired her?
>
> A If April had asked for additional FMLA time, the company would have responded.
>
> Q And how would the company have responded?
>
> A The company --
>
> MS. STAHR: Object to the form.
>
> THE WITNESS: The company would have responded based on the details of specifics of the situation.
>
> BY MR. KERTSCHER: Q Okay. So the company would have given her additional FMLA leave then?
>
> MS. STAHR: Object to the form.
>
> BY MR. KERTSCHER: Q If she'd asked for it?
>
> A If that was -- I mean, if that was – if that was what was described by a doctor and abided by the, you know, by the, by the Family Medical Leave Act, then --
>
> Q Well, she had been approved for the FMLA, right?
>
> A Yes, yes.
>
> Q And she had additional leave left all the way through March of 2017, right?
>
> A Yes. The company would have, if April had described the need for a leave, the company would have granted additional FMLA leave.

(ECF 48, Maxwell Dep., p. 102-104).

Again, after the close of discovery Mr. Maxwell signed a sham affidavit contradicting his statement that Ms. Nix would have been granted FMLA leave if she requested it on October 13, 2016. (ECF 40-3, Maxwell Dec, para. 68, 70-71, 82-84)

Mr. Maxwell's declaration should be disregarded because again it fails to offer an explanation that can withstand any scrutiny. *Piatti*, 2009 WL 383376, at *4. Mr. Maxwell explains this contradiction saying that he was "pressured" by plaintiff's counsel and "I did not have the facts at my disposal in order to provide a clear or correct answer" (ECF 40-3, Maxwell Dec., 82, 84).

The record speaks for itself regarding whether Mr. Maxwell was "pressured." He clearly was not pressured. Further, any assessment of whether he was pressured should be made with the understanding that Mr. Maxwell is a highly educated and sophisticated witness. (ECF 48, p. 7, 19-20).

The supposed need for additional facts is another explanation that cannot withstand scrutiny. Mr. Maxwell's sham declaration does not identify a single fact that he was missing. The proceeding portion of his deposition walked through Ms. Nix's work restrictions and history and refreshed his recollection of the various relevant facts. (ECF 48, p. 1-101). For example, he certainly was aware of McMaster Carr's position that Ms. Nix had permanent restrictions as of October 13; permanent

7

and permanency were used thirty-five (35) times before Mr. Maxwell testified that "if April had described the need for a leave, the company would have granted additional FMLA leave." (ECF 48, Maxwell Dep., p. 102-104, 134). As another example, Mr. Maxwell had recently testified regarding the fact that the termination decision was made approximately a week before the meeting. (ECF 48, Maxwell Dep., p 68). Also, his attorney could have examined him on direct at the conclusion of the deposition if there truly was a relevant fact that needed to be brought to his attention.

Finally, Mr. Maxwell indicates that he prepared an errata sheet to correct his testimony. (ECF 53, para.83). Mr. Maxwell's statement about submitting a corrected errata sheet may be false. The errata sheet was not attached to the declaration. Nor has any such errata sheet has been produced to Plaintiff, and the court reporters (Mary Gershwin and Kelly D'Amico) are not aware of an errata sheet or any corrections to one either.

Further, to the extent there is an errata sheet it is an improper use of the errata sheet because it would making a material change to his testimony. *Jacobs v. Chadbourne*, No. 17-12868, 2018 WL 2068648, at *3 (11th Cir. May 3, 2018) (finding that an errata sheet is to be "used for corrective changes, not contradictory or substantive changes, to deposition testimony").

8

**2.  Megan Puig**

Ms. Puig's declaration contradicts prior unambiguous testimony regarding potential safety issues. In her deposition Ms. Puig clearly testified that she had no knowledge on the relative safety of the 24-inch step, "Is it your opinion that the 24-inch step stool would not be more safe than the step stools that were provided, the 11-inch step stools that were provided? A I can't say if it would be safer." (ECF 41, Puig Dep., p. 77). She similarly testified in her deposition

> Do you dispute what the doctor wrote here about the 24-inch ladder step stool?
> A I'm not disputing that the doctor thought it was safer and therefore recommend it.
> Q Okay. And, did you have any opinion whether or not the doctor was correct?
> A No, other than that our -- the stools we have are also safe.

(Id). Then, her declaration contains inherently contradictory statements that a 24-inch stool presented "safety risks." (ECF 40-12, para. 11).

Additionally, paragraph 39 of Ms. Puig's affidavit should be disregarded because it continues McMaster Carr's attempt to cover-up Ms. Nix's October 13th request for FMLA leave. (ECF 40-12, para. 39). Ms. Puig testified that Ms. Nix requested an "FMLA protected leave." (ECF 41, p. 209). Joel Maxwell disputed whether Ms. Nix specifically requested an *FMLA* leave at her termination meeting, but Ms. Puig's deposition testimony impeached his position. The sham affidavit rule

prevents Ms. Puig from using her declaration to align her testimony with Mr. Maxwell's because it contradicts her prior deposition.

## B. Defendant's Declarations Do Not Comply with the Rules of Evidence

Declarations filed in support of a summary judgment motion are subject to admissibility analysis under the Federal Rules of Evidence. According to Rule 56, affidavits "shall be made on personal knowledge" and shall set forth facts "as would be admissible in evidence" and show that the affiant is "competent to testify as to all matters stated therein." Fed. R. Civ. P. 56(e). A declaration that does not comply with the rules of evidence cannot be considered because it has no probative value. *United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir.1994).

The proper method for challenging the admissibility of evidence in a declaration is to file a notice of objection, not a motion to strike under Rule 12. *See Morgan v. Sears, Roebuck & Co.*, 700 F. Supp. 1574, 1576 (N.D. Ga.1988) (citing *Pinkerton & Laws Co. v. Roadway Express, Inc.*, 650 F. Supp. 1138, 1141 (N.D. Ga. 1986)). The following paragraphs[2] of Defendant's Declarations are below the standards announced by the Eleventh Circuit, and therefore have no probative value and must not be considered:

---

[2] At times the entire paragraph referenced may not be improper; therefore, Plaintiff has created a chart with the objectionable portions of paragraphs quoted and/or summarized.

**1. Declaration of Joel Maxwell (ECF No. 53)**

| Para. No. | Paragraph | Objection |
|---|---|---|
| 10 | "Both hands need to be used to push the cart to maintain control of the cart." | Lack of foundation, improper opinion |
| 12 | A significant portion of the work is non-overhead work that requires regular lifting, pushing, pulling, and carrying "with both arms" in excess of one pound. | Lack of foundation, improper opinion |
| 20 | "the September 8, 2015 restrictions prevented Ms. Nix from performing essential functions of the Bin Filler position." | Legal conclusion, improper opinion |
| 23 | November 10, 2015 and December 8, 2015 restrictions prevented Ms. Nix from performing essential functions of the Bin Filler position | Legal conclusion, improper opinion |
| 26 | February 2, 2016 restrictions prevented Ms. Nix from performing essential functions of the Bin Filler position | Legal conclusion, improper opinion |
| 29 | April 2016 restrictions prevented Ms. Nix from performing essential functions of the Bin Filler position | Legal conclusion, improper opinion |
| 31 | For "ergonomic" reasons bin fillers are rotated through the presentation area. | Improper opinion, lack of foundation |
| 33 | "This would eliminate the need for her to transport a bulky, larger stool through the bins, while meeting her needs as stated in her April, 2016 restriction of safer overhead reaching and reducing the risk of re-injury. I was informed that Ms. Nix agreed with this approach." | Hearsay, legal conclusion, improper opinion, lack of foundation |
| 38 | "the May 2016 restrictions prevented Ms. Nix from performing essential functions of the Bin Filler position." | Legal conclusion, improper opinion |
| 41 | "the August 25, 2016 restrictions prevented Ms. Nix from performing essential functions of the Bin Filler position." | Legal conclusion, improper opinion |

| 73 | "The Bin Filler position cannot be performed with the use of one arm restricted to one pound or less" "The vast majority of this work cannot be safely or effectively done with one arm." | Improper opinion, lack of foundation |
|----|----|----|
| 76 | "From August 15, 2015 to October 13, 2016, Ms. Nix had work restrictions that prevented her from performing the essential functions of the Bin Filler position." | Legal conclusion, improper opinion |

### a. Maxwell's Allegations Concerning Safety

In Paragraphs 10, 12, 20, 23, 26, 29, 31, 38, 41, and 73 Declarant claims that it was not "safe" to perform various tasks with one hand. Each of these paragraphs lacks foundation and fails to satisfy the basic rule that "affiants should state the basis for their personal knowledge." *Colonial Pac. Leasing Corp. v. N & N Partners, LLC*, 981 F. Supp. 2d 1345, 1354 (N.D. Ga. 2013). For example, it is unclear whether the safety concerns are based on personal experience (Maxwell himself was injured), objective tests run by McMaster Carr, or stereotypes and water cooler gossip.

Because the declaration fails to contain any supporting facts indicating how it arrived at the safety conclusion it should be struck. *Broughton v. Sch. Bd. of Escambia Cty., Fla.*, 540 F. App'x 907, 911 (11th Cir. 2013). The Eleventh Circuit has, "consistently held that conclusory allegations without specific supporting facts have no probative value." *Neibert v. Computer Scis. Corp.*, 621 F. App'x 585, 593 (11th Cir. 2015); *see also Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir.

2014) (district court did not abuse its discretion in striking statements as conclusory and speculative when the declaration failed to provide specific, supporting facts).

The absence of supporting facts is particularly troublesome in this context, because under the ADA, to prevent discriminatory stereotyping, safety concerns are only relevant if they are based on particularized facts individual to the Plaintiff. *Lowe v. Alabama Power Co.*, 244 F.3d 1305, 1308-09 (11th Cir. 2001). Further, Ms. Nix had training in the one-arm technique from her physical therapist and experience using only one arm both in her everyday/home life and in McMaster Carr's bins. Ex. K, Nix Dec., para 12, 14-18. Her training and experience makes generalized safety concerns irrelevant.

Further, the safety concerns are hypothetical issues because they were not investigated at the time Defendant decided to terminate Plaintiff. (ECF 41, Puig Dep, p. 203) ("Q. Did you investigate the idea that Ms. Nix could perform one armed bin filling or bin filling using predominately just her right arm with a 24-inch stool on or around October 7th, at the time of her termination? A. No."). In federal court, however, only experts can testify based on hypotheticals. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir.2005) (citations omitted) ("[T]he ability to answer hypothetical questions is '[t]he essential difference' between expert and

lay witnesses."). Defendant did not disclose any experts. (ECF 14, Def. Initial Disclosures, p. 4).

> b. Maxwell's Allegations Regarding Plaintiff's Work Restrictions Preventing her from Performing the Essential Functions of her Job are Legal Conclusions and Improper Opinions

In Paragraphs 20, 23, 26, 29, 38, 41, and 76 Declarant claims that at various time periods throughout Plaintiff's employment, her "work restrictions prevented her from performing the essential functions of the Bin Filler position." In each of these paragraphs Declarant is not stating a factual issue; instead, he is testifying as to his legal interpretation of Plaintiff's work restrictions compared to her job duties. *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia*, 114 F. Supp. 3d 1260 (N.D. Ga. 2015) (stating all witnesses "are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct…the determination of which law applies and what the law means is for the Court to decide."). A proper declaration statement could have involved facts relevant to the determination of whether a function is essential and facts indicating that Ms. Nix could not perform said functions. However, it is improper and inadmissible to jump to the ultimate legal conclusion.

Further, McMaster Carr failed to put forward factual evidence relevant to whether a function is essential such as the number of employees able to perform the

function and jumps to the ultimate legal conclusion of whether Ms. Nix could perform the essential functions. *See* 29 CFR 1630.2(n). Conclusory self-serving testimony, such as those made by declarant here are inadmissible and the Court should preclude any such testimony from Maxwell. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (The district court's responsibility to serve as the singular source of law requires it to be vigilant about the admissibility of legal conclusions).

      c.  <u>Maxwell's Allegation Regarding Plaintiff's Agreement is Inadmissible Hearsay</u>

Paragraph 33 of the Maxwell Declaration is inadmissible hearsay. This testimony is hearsay because it is outside Mr. Maxwell's personal knowledge and is offered as proof of the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(1)-(2) (defining hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement.")[3]. Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. This "personal knowledge" requirement applies to affidavits and declarations as well

---

[3] Technically, the objectionable paragraphs are double-hearsay because they would be inadmissible even in the event that Mr. Maxwell testified live.

as live testimony. See Bankston v. Sewon Am., Inc., 315CV00207TCBRGV, 2018 WL 1779451, at *2 (N.D. Ga. Jan. 31, 2018), report and recommendation adopted, 3:15-CV-207-TCB, 2018 WL 1783167 (N.D. Ga. Mar. 9, 2018) (provide[s] that affidavits and declarations in support of summary judgment 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated); see also Neibert v. Computer Scis. Corp., 621 Fed. Appx. 585, 593 (11th Cir. 2015).

Here, in Paragraph 33, without providing any detail concerning his personal knowledge, Declarant alleges, "I was informed that Ms. Nix agreed with this approach." Because Mr. fails to explain how or if he obtained personal knowledge, and instead merely provides the conclusory allegation that "Ms. Nix agreed with this approach," it is clear that he could only know this information if it was told to him; this is hearsay. *See In re Mitchell*, No. 04-92943, 2005 WL 6487215, at *3 (Bankr. N.D. Ga. Aug. 16, 2005) (When an affiant does not state how he knows something the "affidavit can be read either as hearsay or as wishful thinking" and is inadmissible).

16

## 2.  Declaration of Megan Puig (ECF No. 54)

| Para. No. | Paragraph | Objection |
|---|---|---|
| 8 | "For ergonomic and operational reasons, Bin Fillers are not staffed in the presentation area on a full time basis but rather are rotated through." | Lack of foundation, improper opinion |
| 11 | "Ms. Madere and I determined that this would be a superior way to accommodate the goal of safer overhead lifting and reducing the risk of reinjury, as it would eliminate the need to transport a heavy stool around as well as the potential safety risks that use of a higher stool entailed. | Improper opinion, lack of foundation |
| 16 | "On August 17, 2016, six stools chosen by Ms. Nix were ordered for her." | Hearsay |
| 23 | "My understanding is that, other than when she came in for a brief conversation with me on September 8, she was off work on September 8 and 9." | Hearsay |
| 27 | "Allison Thomas told me there was no open position in the office. [A]nd Ms. Thomas said that no sales training groups were being staffed in the office, and that there was no project work in need of staffing, either." | Hearsay |
| 35 | "Ms. Thomas confirmed that there were no openings in the office, that the office had not filled any non-management positions in some time, and was not planning to do so at any time in the foreseeable future. She confirmed that there was no sales training group or other project work in need of staffing, either." | Hearsay |
| 39 | "In addition, none of the temporary task work in the warehouse that was available in any regular basis could be performed with one-pound restrictions to one arm." | Lack of foundation, improper opinion |
| 48 | McMaster-Carr uses a rolling year calculation for FMLA leave. If Ms. Nix were granted all FMLA | Hearsay |

| | leave to which she was entitled on October 13, 2016, all FMLA leave would have exhausted on or before November 18, 2016. | |
|---|---|---|

a. <u>Hearsay</u>

The last line of paragraph 16 is hearsay. Fed. R. Evid. 801(c)(1)-(2); *see also supra* at p. 16. Ms. Puig makes a statement that Ms. Nix chose a particular stool but she was not involved in the selection of stools in August 2016 and does not have personal knowledge of whether the stool was chosen by Ms. Nix or selected by Mike Deidrick or Kenny Sanders. (ECF 41, Puig Dep., p. 94-95).

Ms. Puig's statement in paragraph 23 that it is her "understanding" that Ms. Nix did not work on two days in September 2016 is inadmissible hearsay. A declaration stating "only that the affiant 'believes' a certain fact exists is insufficient" at summary judgment. *Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002).

Paragraphs 27 and 35 are the most basic form of hearsay. These paragraphs contain the out-of-court statements of Allison Thomas for the truth of the matter asserted. These statements are inadmissible and only the direct testimony of Allison Thomas can be considered.

In Paragraph 48 Ms. Puig states that, "McMaster-Carr uses a rolling year calculation for FMLA leave. If Ms. Nix were granted all FMLA leave to which she was entitled on October 13, 2016, all FMLA leave would have exhausted on or before November 18, 2016." However, during her deposition she previously testified that she did not handle FMLA requests (leave management did) and that she lacked personal knowledge of McMaster Carr's FMLA policies other than the general position that McMaster granted the FMLA requests of eligible employees. (ECF 41, Puig Dep, p. 23-24, 165-66). Additionally, this paragraph does not contain any supporting facts to permit an understanding of how the end-date of November 18, 2016 was calculated. Because Ms. Puig testified that she lacked personal knowledge regarding anything but McMaster Carr's most basic FMLA policy, she cannot testify to the calculation method.

   b.  Puig's Allegations Concerning Safety and Ergonomics

In Paragraph 8, 11, and 39 Declarant claims that for "ergonomic" or "safety" reasons, that certain positions were not available to Plaintiff, or that alternative accommodations were made available to Plaintiff. Identical to the Maxwell Declaration, each of these paragraphs lacks foundation and fails to satisfy the basic rule that "affiants should state the basis for their personal knowledge." *Colonial Pac. Leasing Corp. v. N & N Partners, LLC*, 981 F. Supp. 2d 1345, 1354 (N.D. Ga. 2013).

Again, it is unclear whether the safety concerns are based on personal experience (Puig herself was injured), objective tests run by McMaster Carr, or stereotypes and water cooler gossip. It is likewise unclear what the conclusory statement "for ergonomic and operational reasons" means, as no supporting facts indicating how the declaration arrived at the ergonomic conclusion, much less, how Puig obtained personal knowledge of the ergonomic issue. Because the declaration fails to contain such supporting facts it should be struck. *Broughton v. Sch. Bd. of Escambia Cty., Fla.*, 540 F. App'x 907, 911 (11th Cir. 2013) (conclusory allegations lacking factual support should be struck); *see also supra* at p. 12-13 (citations to legal authority and unique training of Plaintiff).

Further, like the Maxwell Declaration, the safety concerns are hypothetical issues because Defendant did not investigate them at the time Defendant decided to terminate Plaintiff and therefore fall within the exclusive providence of an expert. *See supra* at p. 13.

### 3.  Declaration of Amy Madere (ECF No. 52)

| Para. No. | Paragraph | Objection |
|-----------|-----------|-----------|
| 6 | "Both hands need to be used to push the cart to maintain control of the cart." | Lack of foundation, improper opinion |

| 10 | "This would avoid all overhead lifting and reduce the risk of reinjury, arguably more than using a 24 inch stool would, and would also eliminate the need to transport a heavy stool around the bins and the potential safety risks that use of a higher stool entailed. Ms. Puig agreed that this approach should be presented to Ms. Nix." | Lack of foundation, improper opinion |
| --- | --- | --- |
| 12 | "I agreed that no warehouse position could be safely performed with restrictions that limited use of the left arm to one pound or less." | Lack of foundation, improper opinion |
| 15 | "There is no regularly available light duty task or function in the warehouse that can accommodate a one pound restriction to one arm." | Lack of foundation, improper opinion |

      a.   <u>Madere's Allegations Regarding Safety Concerns or Inability to Perform a Job with One Hand Lack Foundation and are Improper Opinions</u>

In Paragraphs 6, 10, 12, and 15 Declarant claims that two arms are required to perform various tasks. In some instances Ms. Madere expressly raises safety concerns. In other instances there is no explanation for Ms. Madere's bare conclusion that a position cannot be performed with one arm. However, in all instances the objectionable paragraphs fail to state supporting facts, they cannot be considered. *Neibert v. Computer Scis. Corp.*, 621 F. App'x 585, 593 (11th Cir. 2015); *see also supra* at p. 12-13 (additional legal support and factual citation of Ms. Nix's unique ability).

21

### 4.  Declaration of Patrick McKenna (ECF No. 55)

a.  <u>Safety Allegations</u>

In paragraph 10 Declarant claims that bin case sealing and box making require "both arms" to be able to lift more than one pound. Like the safety concerns raised by the other declarations, because Mr. McKenna does not provide any supporting facts as to why the lifting could not be done with one arm, this conclusory allegation has no probative value and cannot be considered. *Neibert v. Computer Scis. Corp.*, 621 F. App'x 585, 593 (11th Cir. 2015); *see also supra* at p. 12-13 (additional legal support and factual citation of Ms. Nix's unique ability).

### 5.  Declaration of Allison Thomas (ECF No. 51)

a.  <u>Not disclosed witness</u>

In discovery, Defendant did not identify Allison Thomas as a witness in either its initial disclosures or interrogatory responses. (ECF No. 50-2, Verified Interrogatory Responses, pp. 2-3; ECF 14, Def. Initial Disclosures, p. 8). Because Defendant failed to disclose the relevance or identity of Allison Thomas as a witness, Defendant should be precluded from relying on her declaration at summary judgment.

Pursuant to Federal Rule of Civil Procedure 26, without awaiting a discovery request, a party must set forth in its initial disclosures "the name and, if known, the

address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).

Additionally, Fed. R. Civ. P. 26(e) requires the timely supplementation of such disclosures. A party who "fails to provide **information** or identify a witness as required by Rule 26 ... **is not allowed** to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1)(emphasis added).

The Eleventh Circuit reviews a trial court's decision to exclude evidence for abuse of discretion. *Nance v. Ricoh Electronics, Inc.*, 381 F. App'x 919, 922 (11th Cir. 2010) (citation omitted). Accordingly, this Court should not allow unfair ambush at summary judgment or trial and should exclude Allison Thomas as witness to supply evidence in this case.

This 4th day of June, 2018.

Respectfully submitted,

/s/ Douglas R. Kertscher
Douglas R. Kertscher
Georgia State Bar No. 416265
Julie H. Burke
Georgia State Bar No. 448095
Attorneys for Plaintiff

23

HILL, KERTSCHER & WHARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, Georgia 30339
Telephone:   (770) 953-0995
Facsimile:    (770) 953-1358

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| APRIL NIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 1:17-CV-02785-SCJ-JFK |
| | ) | |
| MCMASTER-CARR SUPPLY CO., | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this date caused to be served upon all counsel a true and correct copy of the within and foregoing **NOTICE OF OBJECTION TO DECLARATIONS OF JOEL MAXWELL, MEGAN PUIG, AMY MADERE, PATRICK MCKENNA, AND ALLISON THOMAS** with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

Chiaka U. Adele
Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus LLP
900 Circle 75 Parkway
Suite 850
Atlanta, GA 30339

Max G. Brittain, Jr.
Julie Stahr
Schiff Hardin LLP
233 S. Wacker Drive
Suite 7100

25

Chicago, IL 60606

This 4th day of June, 2018.

/s/ Douglas Kertscher
Douglas R. Kertscher
Georgia State Bar No. 416265
Email: drk@hkw-law.com

HILL, KERTSCHER & WHARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, Georgia 30339
Telephone:   (770) 953-0995
Facsimile:    (770) 953-1358